**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| AARON E. JODEH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>DISH NETWORK, L.L.C., a Colorado limited liability corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Aaron E. Jodeh ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant DISH Network L.L.C. ("DISH" or "Defendant") based upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of his attorneys.

**NATURE OF THE ACTION**

1.      On or around February 23, 2023, DISH experienced a network outage that affected its internal servers and IT telephony. During and as a result of this incident (the "Data Breach"), unauthorized third-party hackers were able to access DISH's internal data servers and extract the Personal Identifying Information ("PII") of 296, 851 of DISH's employees and subscribers.[1]

---

[1] *Data Breach Notifications* https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last accessed May 31, 2023).

2.      DISH is an American satellite television provider. In order to receive its services, DISH requires its subscribers to provide it with their sensitive PII. Likewise, DISH requires its employees' PII as a requirement of employment and requires its' employees' family members' PII in order for those family members to receive certain employment benefits. DISH then collects, aggregates, and stores that employee and subscriber PII in its internal data servers.

3.      Under statute and regulation, DISH had a duty to implement reasonable, adequate industry-standard data security policies safeguards to protect the PII stored in its internal data servers. These duties are acknowledged and independently promised to DISH's subscribers through, inter alia, its customer-facing privacy notice (The 'Privacy Notice"). In particular, Dish's Privacy Notice promises that "[w]e take information security seriously," and that Dish will "use commercially reasonable efforts to prevent unauthorized third-party access to information about you."[2]  However DISH did not implement these required and promised data security safeguards, and failed in its duty to protect its' customers' sensitive PII.

4.      Plaintiff, individually and on behalf of those similarly situated persons (hereafter "Class Members"), bring this Class Action to secure redress against DISH for its reckless and negligent violation of their privacy rights. Plaintiff and Class Members are current and former employees, family members and subscribers of DISH that had their PII collected, stored and ultimately breached by DISH.

5.      As a result of DISH's wrongful actions and inactions, Plaintiff's and Class Members' PII was stolen. Plaintiff and Class Members who have had their PII compromised by

---

[2] *Privacy Statement*, https://www.dish.com/downloads/legal/privacystatement.aspx (last accessed May 31, 2023).

nefarious third-party hackers, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against DISH.

6.      Plaintiff and Class Members have suffered injuries and damages. As a result of DISH's wrongful actions and inactions, Plaintiff and Class Members' full names, driver's license numbers, Social Security numbers, health insurance information and financial account information, among other information, have all been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened risk of identity theft and credit fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect themselves from future loss. Plaintiff and Class Members have also lost the value of their PII, for which there is a thriving market on both the dark web and on legal marketplaces. Finally, Plaintiff and Class Members who are subscribers of DISH have lost the benefits of their bargains with DISH, as they would not have entered into agreements and paid money for DISH's services had they known that DISH would not implement reasonable and adequate data security safeguards to protect the PII that they entrusted to it.

## THE PARTIES

7.      Plaintiff Aaron E. Jodeh is a Colorado citizen residing in Littleton, Colorado. Plaintiff Jodeh has been a subscriber to Defendant's satellite television services for the better part of twenty years. In order to receive Defendant's services, Plaintiff Jodeh provided Defendant with his PII—including, *inter alia*, his full name, Social Security number, and financial account

information. On or about May 17, 2023, Plaintiff Jodeh received a data breach notice from Defendant informing him that his PII had been acquired by third-party hackers in the Data Breach.

8.     Defendant DISH Network LLC is a Colorado limited liability company with its principal addresses located at 9601 S Meridian Blvd, Englewood, Colorado, 80112. Defendant's registered agent for service of process is Timothy Allen Messner, who can be located at that same address.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Minimal diversity exists upon the original filing of this complaint, there exist members of the putative Plaintiff class who are citizens of states different from Defendant. Indeed, the putative class consists of, among others, at least 529 Maine citizens[3], 181 Montana citizens[4], and 1429 Massachusetts citizens.[5] Additionally, there are more than 100 putative class members and the amount in controversy exceeds $5 million.

10.    The Court also has personal jurisdiction over the Parties because Defendant maintains its principal addresses in Colorado, routinely conducts business in Colorado and has sufficient minimum contacts in Colorado to have intentionally availed themselves to this jurisdiction by marketing and selling its television network services in Colorado.

11.    Venue is proper in this District because, among other things: (a) Plaintiff Jodeh is

---

[3] *Data Breach Notifications* https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last accessed May 31, 2023).

[4] *Reported Data Breach Incidents* https://dojmt.gov/consumer/databreach/ (last accessed May 31, 2023).

[5] *Data Breach Notification Report* https://www.mass.gov/doc/data-breach-report-2023/download (last accessed May 31, 2023).

a resident of this District and a citizen of this state; (b) Defendant directed its activities at residents in this District; and (c) many of the acts and omissions that give rise to this Action took place in this judicial District for services provided in this district.

## FACTUAL ALLEGATIONS

### A.  The Data Breach

12.     DISH is an American satellite television company that provides television services to customers across the United States. As part of its standard operations, DISH collects, aggregates and stores PII from its customers, as well as from its employees and their family members.  As a result, DISH's systems store the PII of millions of individuals across the United States.

13.     On or around February 23, 2023, DISH's systems were accessed by unauthorized third-party hackers, who exfiltrated Plaintiff's and Class Members' sensitive PII—including, but not limited to, full names, driver's license numbers, Social Security numbers, health insurance information and financial account information, among other information. In its data breach notification filed the Maine Attorney General's Office, DISH reported that the data breach has impacted 296, 851 individuals.[6]

14.     DISH has confirmed that the data breach was the result of a ransomware attack,[7] a method of hacking wherein malicious actors use exploits to gain unauthorized access to and encrypt files on a device or server, rendering any files and the systems that rely on them unusable. These actors, known as "ransomware gangs," use ransomware to unlawfully obtain private,

---

[6] *Data Breach Notifications* https://apps.web.maine.gov/online/aeviewer/ME/40/ec8cf5c5-3048-4b22-baa9-10438a51e6f5.shtml (last accessed May 31, 2023).
[7]    "Dish    says    ransomware    gang    stole    almost    300,000    employee    records" https://techcrunch.com/2023/05/22/dish-says-ransomware-gang-stole-almost-300000-employee-records/ (last accessed May 31, 2023).

sensitive and/or confidential information, and then demand a ransom in exchange for decrypting the affected files. Ransomware attacks are often targeted towards businesses such as Defendant that are known to collect and store the confidential and sensitive PII of hundreds of thousands of individuals.

15.     Further, DISH's data breach notification letter omits key information and contains misleading statements. While DISH's data breach notification letter sent to Plaintiff and Class Members claims that "[w]e have received confirmation that the extracted data has been deleted," DISH has no possible way to confirm if the stolen data has actually been deleted. Ransomware gangs only delete or decrypt stolen data after a ransom is paid. Thus, while DISH does not state this in its letter, DISH most likely paid a ransom to its hackers in exchange for the deletion of the stolen information.

16.     However, paying a ransom does not guarantee the complete deletion of stolen data. Indeed, many ransomware gangs who are paid ransoms use fake data as proof of deletion, and subsequently leak the true stolen data later on.[8] It is for this reason that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[9]

---

[8]     "Ransomware gangs don't always delete stolen data when paid" https://www.bleepingcomputer.com/news/security/scam-psa-ransomware-gangs-dont-always-delete-stolen-data-when-paid/ (last accessed June 1, 2023).

[9]     "Ransomware"   https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware (last accessed June 1, 2023).

17.     Likewise, DISH's data breach notification letter claims that DISH "determined that our customer databases were not accessed in this incident." However, Plaintiff Jodeh's data was breached, despite him never having been an employee of DISH, nor does has he received benefits as a family member of a DISH employee.

18.     As such, DISH's data breach notification letter claiming that the stolen has been deleted is misleading to Plaintiff and Class Members, providing a false sense of security at a time when they need to be more vigilant than ever. DISH cannot possibly confirm that the stolen data has truly been deleted. Plaintiff's and Class Members' data remains equally at risk, and their injuries remain unaddressed.

**B. DISH's Failed Promises to Provide Reasonable, Adequate and Compliant Data Security**

19.     DISH makes promises to its customers and employees that it will implement reasonable, adequate and compliant data security to protect the sensitive PII entrusted to them. DISH makes these promises in, *inter alia*, its online Privacy Notice, wherein it states that "[w]e take information security seriously" and that "[w]e use commercially reasonable efforts to prevent unauthorized third-party access to information about you."[10]

20.     DISH clearly recognized its duty to provide reasonable data security for Plaintiff's and Class Members' PII that it collects and stores as part of its business practices. DISH made promises to do so. Despite this, on information and belief, DISH did not implement reasonable data security safeguards and protocols to protect Plaintiff's and Class Members PII.

---

[10] *Privacy Statement*, https://www.dish.com/downloads/legal/privacystatement.aspx (last accessed May 31, 2023).

21.     DISH's failure to implement reasonable, adequate and compliant data security is evidenced by the fact that it was breached through a ransomware attack. Ransomware is a common method of attack that a business such as DISH should have been aware of and prepared for. Additionally, Ransomware attacks are highly preventable through the implementation of reasonable and adequate cybersecurity safeguards and/or proper employee cybersecurity training, as the vast majority of ransomware incidents are caused by poor user practices, lack of cybersecurity training, and weak passwords or access management.[11] For instance, ransomware is most commonly spread through "phishing" emails sent to employees with customer or patient data on their devices, which contain malicious attachments that allow a hacker to access that customer or patient data. Ransomware is also commonly spread when an employee visits an infected website on a device connected to a company server. As such, businesses with adequate and reasonable data security practices train their employees not to open email attachments from unrecognized emails or visit unauthorized websites on company devices.

### C.  DISH's Obligation to Protect PII Under State and Federal Law

22.     DISH, as a business that "maintains, owns or licenses personal identifying information in the course of" its business, is a "covered entity" under Colo. Rev. Stat §6-1-713(2)(a). Under Colo. Rev. Stat §6-1-713.5(1), covered entities such as DISH are required to "implement and maintain reasonable security procedures and practices appropriate to the nature of the information, and the nature and size of the business and its operations."

23.     Further, the Federal Trade Commission Act, 15 U.S.C. §45 prohibits businesses

---

[11]  Statista,  https://www.statista.com/statistics/700965/leading-cause-of-ransomware-infection/ (last accessed June 1, 2023).

such as DISH from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission has found The Federal Trade Commission has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the Federal Trade Commission Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3rd Cir. 2015).

24.     DISH failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff and Class Members' PII.

**D.  Applicable Standards of Care**

25.     In addition to their obligations under state and federal law, DISH owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. DISH owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer system and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and Class Members.

26.     DISH owed a duty to Plaintiff and the Class Members to design, maintain, and test their computer system to ensure that the PII in Defendants' possession was adequately secured and protected.

27.     DISH owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in their possession, including adequately training their employees and others who accessed the PII in their possession, including

adequately training their employees and others who accessed PII in their computer systems on how to adequately protect PII.

28.     DISH owed a duty of care to Plaintiff and Class Members to implement processes that would detect a breach of their data security systems in a timely manner.

29.     DISH owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

30.     DISH owed a duty to Plaintiff and Class Members to disclose if their computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to provide or entrust their PII to DISH.

31.     DISH owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when the data breach occurred.

32.     DISH owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices. DISH received PII from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their PII to be protected from disclosure. Defendants knew that a breach of its data systems would cause Plaintiff and Class Members to incur damages.

**E.  Stolen Information Is Valuable to Hackers and Thieves**

33.     It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers. Especially in the technology industry, the issue of data security and threats thereto is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Defendant opted to maintain an insufficient and inadequate

system to protect the PII of Plaintiff and Class Members.

34.     Plaintiff and Class Members value their PII, as in today's electronic-centric world, their PII is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for special deals.

35.     Legitimate organizations and criminal underground alike recognize the value of PII. That is why they aggressively seek and pay for it.

36.     PII is highly valuable to hackers. Identity thieves use stolen PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. PII that is stolen from the point of sale are known as "dumps." *See All About Fraud: How Crooks Get the CVV*, Krebs on Security (April 26, 2016), https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/.

37.     Once someone buys PII, it is then used to gain access to different areas of the victim's digital life, including bank accounts, social media, and credit card details. During that process, other sensitive data may be harvested from the victim's accounts, as well as from those belonging to family, friends, and colleagues.

38.     In addition to PII, a hacked email account can be very valuable to cyber criminals. Since most online accounts require an email address not only as a username, but also as a way to verify accounts and reset passwords, a hacked email account could open up a number of other accounts to an attacker.[12]

---

[12] *Identity Theft and the Value of Your Personal Data*, Trend Micro (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data. (last accessed June 1, 2023)

39.     As shown below, a hacked email account can be used to link to many other sources of information for an identity thief, including any purchase or account information found in the hacked email account.[13]



40.     Hacked information can also enable thieves to obtain other personal information through "phishing." According to the Report on Phishing available on the United States, Department of Justice's website: "AT&T, a large telecommunications company, had its sales system hacked into, resulting in stolen order information including full names and home addresses, order numbers and credit card numbers. The hackers then sent each customer a highly personalized e-mail indicating that there had been a problem processing their order and re-directing them to a

---

[13] Brian Krebs, *The Value of a Hacked Email Account*, Krebs on Security (June 13, 2013, 3:14 PM), https://krebsonsecurity.com/2013/06/the-value-of-a-hacked-email-account/. (last accessed June 1, 2023)

spoofed website where they were prompted to enter further information, including birthdates and Social Security numbers."[14]

**F.   The Data Breach Has and Will Result in Additional Identity Theft and Identity Fraud**

41.     Defendant failed to implement and maintain reasonable security procedures and practices appropriate to protect the PII of Plaintiff and the Class Members. The ramification of Defendant's failure to keep Plaintiff and the Class Members' data secure is severe.

42.     It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[15] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id.*

**G.   Annual Monetary Losses from Identity Theft are in the Billions of Dollars**

43.     Javelin Strategy and Research reports that losses from identity theft reached $21 billion in 2013. There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

---

[14] *Report on Phishing* (Oct. 2006), https://www.justice.gov/archive/opa/docs/report_on_phishing.pdf (last accessed June 1, 2023)

[15] *See Victims of Identity Theft*, U.S. Department of Justice (Dec 2013), https://www.bjs.gov/content/pub/pdf/vit12.pdf (last accessed June 1, 2023)

> continue for years. As a result, studies that attempt to measure the harm resulting
> from data breaches cannot necessarily rule out all future harm.

*See* GAO, Report to Congressional Requesters (June 2007), http://www.gao. gov/new.items/d07737.pdf. (last accessed June 1, 2023).

44. Plaintiff and the Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any financial or identity fraud they suffer.

**H. Plaintiff and Class Members Suffered Damages**

45. The exposure of Plaintiff and Class Members' PII to unauthorized third-party hackers was a direct and proximate result of Defendants' failure to properly safeguard and protect Plaintiff and Class Members' PII from unauthorized access, use, and disclosure, as required by and state and federal law. The data breach was also a result of Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' PII in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and state and federal law.

46. Plaintiff and Class Members' PII is private and sensitive in nature and was inadequately protected by Defendants. Defendants did not obtain Plaintiff and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

47. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting data breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing risk of harm from identity theft and identity fraud, requiring them to

take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, paying for credit and identity monitoring services, spending time on credit and identity monitoring, placing "freezes" and "alerts" with credit reporting agencies, contacting their personal, financial and healthcare institutions, closing or modifying personal, financial or healthcare accounts, and closely reviewing and monitoring their credit reports, financial accounts and healthcare accounts for unauthorized activity.

48.     Plaintiff has also lost the value of his PII. PII is a valuable commodity, as evidenced by numerous companies which purchase PII from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen PII across multiple different illicit websites.

49.     Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified Paypal accounts with high balances are listed at as much as $2,000.

50.     In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |

Wells Fargo bank statement with transactions:        $80

Rutgers State University student ID:        $70

51.     Finally, Plaintiff and Class Members who are customers and subscribers of Defendant have lost the benefits of their bargains with Defendant. Plaintiff and Class Members would not have subscribed to or paid for services from Defendant or would only have been willing to pay substantially less for them, had they been aware that Defendant would not implement reasonable and adequate data security to protect their PII. As a result, Plaintiff and Class Members have been injured and are entitled to recovery in an amount equal to the difference in price between Defendant's services that include reasonable and adequate data security, and the services they received which did not.

52.     Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

     a.   The improper disclosure and theft of their PII;

     b.   The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being exposed to and misused by unauthorized third-party hackers;

     c.   The inadequate notification of the data breach;

     d.   Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

e.   Ascertainable losses in the form of deprivation of the value of their PII, for
which there is a well-established national and international market.

**CLASS ACTION ALLEGATIONS**

53.    Plaintiff brings this action on their own behalf and pursuant to the Federal Rules of
Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4). Plaintiff intends to seek certification of a
Nationwide Class and California Subclass. The Classes are initially defined as follows:

The <u>Nationwide Class</u>, initially defined as:

All persons residing in the United States of America who received a data
breach notice informing them that their PII had been breached by
unauthorized third parties as a result of DISH's data breach.

Excluded from each of the above Classes is Defendant, including any entity in which
Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant,
as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors,
and assigns of Defendant. Also excluded are the judge and the court personnel in this case and any
members of their immediate families. Plaintiff reserves the right to amend the Class definitions if
discovery and further investigation reveal that the Classes should be expanded or otherwise
modified.

54.    *Numerosity*, Fed. R. Civ. P. 23(a)(1):  The members of the Class are so numerous
that the joinder of all members is impractical. The disposition of the claims of Class Members in
a single action will provide substantial benefits to all parties and to the Court. The Class Members
are readily identifiable from information and records in Defendant's possession, custody, or
control, such as reservation receipts and confirmations.

55.    *Commonality*, Fed. R. Civ. P. 23(a)(2) and (b)(3): There are questions of law and

17

fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

b.  Whether Defendant violated common and statutory by failing to implement reasonable security procedures and practices;

c.  Which security procedures and which data-breach notification procedure should Defendant be required to implement as part of any injunctive relief ordered by the Court;

d.  Whether Defendant knew or should have known of the security breach prior to the disclosure;

e.  Whether Defendant has complied with any implied contractual obligation to use reasonable security measures;

f.  Whether Defendant's acts and omissions described herein give rise to a claim of negligence;

g.  Whether Defendant knew or should have known of the security breach prior to its disclosure;

h.  Whether Defendant had a duty to promptly notify Plaintiff and Class Members that their PII was, or potentially could be, compromised;

i.  What security measures, if any, must be implemented by Defendant to comply with its duties under state and federal law;

j.   The nature of the relief, including equitable relief, to which Plaintiff and the Class Members are entitled; and

k.   Whether Plaintiff and the Class Members are entitled to damages, civil penalties, and/or injunctive relief.

56.   *Typicality*. Fed. R. Civ. P. 23(a)(3):  Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was misused and/or disclosed by Defendant.

57.   *Adequacy of Representation*, Fed. R. Civ. P. 23(a)(4):  Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Classes and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Classes will be fairly and adequately represented by Plaintiff and his counsel.

58.   *Superiority of Class Action*, Fed. R. Civ. P. 23(b)(3):  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

59.   Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law

inflicting substantial damages in the aggregate would go un-remedied.

60.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

61.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60, inclusive, of this Complaint as if set forth fully herein.

62.     In 2016, the Federal Trade Commission ("FTC") updated its publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and practices for business. [16]  Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event

---

[16] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf. (last accessed June 1, 2023)

of a breach. [17]   Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures. [18]

63.     Defendant owed Plaintiff and the Class Members a duty of care in the handling of customers' PII. This duty included, but was not limited to, keeping that PII secure and preventing disclosure of the PII to any unauthorized third parties. This duty of care existed independently of Defendants' contractual duties to Plaintiff and the Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendant is obligated to incorporate adequate measures to safeguard and protect PII that is entrusted to them in their ordinary course of business and transactions with customers.

64.     Pursuant to the Federal Trade Commission Act (15 U. S. C. §45), Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U. S. C. § 45. Orders from these actions further clarify the measures

---

[17] *Id*.
[18] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.   (last accessed June 1, 2023)

businesses are required to undertake in order to satisfy their data security obligations. [19]

65.     Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's ("NIST's") *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018), https://nvlpubs. nist. gov/nistpubs/CSWP/ NIST. CSWP. 04162018. pdf. Among other guideposts, the NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2). Those steps are:

*Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.

*Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.

*Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.

*Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.

---

[19]  Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement (last accessed June 1, 2023),

*Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.

*Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.

*Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to further achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

66.     In addition to their obligations under federal regulations and industry standards, Defendant owed a duty to Plaintiff and the Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and the Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems and networks, and the personnel responsible for them, adequately protected the PII of Plaintiff and the Class Members.

67.     Defendants owed a duty to Plaintiff and the Class Members to design, maintain, and test their internal data systems to ensure that the PII in Defendant's possession was adequately secured and protected.

68.     Defendants owed a duty to Plaintiff and the Class Members to create and implement reasonable data security practices and procedures to protect the PII in its custodianship, including adequately training its employees and others who accessed PII within its computer systems on how to adequately protect PII.

69.     Defendant owed a duty to Plaintiff and the Class Members to implement processes or safeguards that would detect a breach of their data security systems in a timely manner.

70.     Defendant owed a duty to Plaintiff and the Class Members to act upon data security warnings and alerts in a timely fashion.

71.     Defendant owed a duty to Plaintiff and the Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material consideration in Plaintiff and Class Members' decisions to entrust their PII to Defendants.

72.     Defendant owed a duty to Plaintiff and the Class Members to disclose in a timely and accurate manner when data breaches occur.

73.     Defendant owed a duty of care to Plaintiff and the Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendant collected PII from Plaintiff and the Class Members. Defendants knew that a breach of its data systems would cause Plaintiff and the Class Members to incur damages.

74.     Defendants breached its duties of care to safeguard and protect the PII which Plaintiff and the Class Members entrusted to it. Defendant adopted inadequate safeguards to protect the PII and failed to adopt industry-wide standards set forth above in its supposed protection of the PII. Defendant failed to design, maintain, and test its computer system to ensure that the PII was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect a breach of its data security systems in a timely manner, failed to disclose the breach to potentially affected customers in a timely and comprehensive manner, and otherwise breached each of the above duties of care by implementing careless security procedures which led directly to the breach.

75.     Defendant breached the duties set forth in 15 U.S.C. §45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. §45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Member's PII. In violation of the FTC guidelines, *inter alia*, Defendant did not protect the personal customer information that it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their network's vulnerabilities; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendant, *inter alia*, failed to adopt sufficient resources to identity and address security gaps.

76.     Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

77.     As a direct and proximate result of Defendant's failure to adequately protect and safeguard the PII, Plaintiff and the Class members suffered damages. Plaintiff and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiff and the Class members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendant failed to notify Plaintiff and Class Members of the data breach until weeks had passed. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records in order to ensure that they do not become the victims of fraud and/or identity theft.

78.     Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### Breach of Implied Contract

79.     Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 78, inclusive, of this Complaint as if set forth fully herein.

80.     Plaintiff and Class Members were required to provide Defendant with their PII in order to receive television services from Defendant, or as a requirement to enter into employment for Defendant or receive benefits as an employee's family member from Defendant.

81.     By providing this PII, and by Defendant accepting this PII from Plaintiff and Class members, the Parties mutually assented to implied contracts. These implied contracts included an agreement and understanding that Defendant would implement reasonable and adequate data

security safeguards to protect the sensitive PII entrusted to it by Plaintiffs and Class Members.

82.     These implied contracts are recognized and acknowledged by Defendant's internal employment and customer facing documents. These documents include, *inter alia,* Defendant's Privacy Notice, wherein Defendant promises that "[w]e take information security seriously," and that Dish will "use commercially reasonable efforts to prevent unauthorized third-party access to information about you."[20]

83.     Plaintiff and Class Members reasonably believed that Defendant would implement reasonable and adequate data security policies and procedures to protect their PII. Plaintiff and Class Members provided consideration to Defendant for those policies and procedures by providing both payments for services and by providing their valuable PII to Defendant.

84.     Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

85.     Defendant materially breached its implied contracts with Plaintiff and Class Members by failing to implement reasonable and adequate data security safeguards to protect their PII. Defendant knew or should have known that it had not implemented such safeguards, and that such information would be material to Plaintiff and Class Members. Defendant bore exclusive knowledge of these facts.

86.     Plaintiff and Class Members would not have entered into agreements with Defendant and would not have paid money for Defendant's services, or would only have been willing to pay substantially less for them, had they known that Defendant had not implemented

---

[20] *Privacy Statement*, https://www.dish.com/downloads/legal/privacystatement.aspx (last accessed May 31, 2023).

reasonable and adequate safeguards to protect their PII.

87.     As a direct and proximate result of Defendant's failure to adequately protect and safeguard the PII, Plaintiff and the Class members suffered damages. Plaintiff and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiff and the Class members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendant failed to notify Plaintiff and Class Members of the data breach until weeks had passed. In addition, Plaintiff and Class Members were also damaged in that they must now spend copious amounts of time combing through their records in order to ensure that they do not become the victims of fraud and/or identity theft.

88.     Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

### THIRD CAUSE OF ACTION

**Unjust Enrichment**

89.     Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 88 inclusive of this Complaint as if set forth fully herein.

90.     Plaintiffs and Class Members provided their PII as a requirement of employment and/or conferred a monetary benefit upon Defendant in exchange for services. Plaintiffs and Class Members did so under the reasonable but mistaken belief that part of their monetary payment to Defendant would cover the implementation of reasonable, adequate, and statutorily mandated safeguards to protect their PII. Defendant was unjustly enriched when it sold its services at a higher

price than it otherwise would have based on those reasonable but mistaken beliefs. Defendant was also unjustly enriched where it saved costs by not implementing reasonable and adequate data security safeguards that were reasonable and required by statute and regulation.

91.     Defendant's enrichment came at the expense of Plaintiffs and Class Members, who would not have entered into agreements with Defendant and/or would not have paid for Defendant's services or would have only been willing to paid substantially less for them, had they been aware that Defendant had not implement reasonable, adequate and statutorily mandated safeguards to protect their PII.

92.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit extracted from and belonging to Plaintiff and Class Members through its false promises and material omissions regarding the adequacy of its data security environment.

93.     As a direct and proximate result of Defendant's wrongful actions and inactions, Plaintiffs and Class Members suffered have suffered damages in the form of their lost benefit of the bargains. Plaintiffs and Class Members entered into agreements with Defendant under the reasonable but mistaken belief that it would reasonably and adequately protect their PII. Plaintiffs and Class Members would not have entered into such agreements had they known that Defendant would not reasonably and adequately protect their PII. Plaintiffs and Class Members have thus suffered actual damages in an amount at least equal to the difference in value between the medical services that include reasonable and adequate data security that they bargained for, and the medical services that do not that they actually received.

94.     Defendant should not be permitted to retain Plaintiff's and Class Members' lost benefits, without having adequately implemented the data privacy and security procedures for itself that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards. Defendant should not be allowed to benefit at the expense of consumers who trust Defendant to protect the PII that they are required to provide to Defendant in order to receive Defendant's services.

95.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## FOURTH CAUSE OF ACTION

### Breach of Fiduciary Duty

96.     Plaintiffs repeat and incorporate herein by reference each and every allegation contained in paragraphs 1 through 95, inclusive, of this Complaint as if set forth fully herein.

97.     Plaintiffs and Class Members provided their PII to Defendant in confidence and under the reasonable but mistaken belief that Defendant would protect the confidentiality of that information. Plaintiffs and Class Members would not have provided Defendant with their PII had they known that Defendant would not take reasonable and adequate steps to protect it.

98.     Defendant's acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between Defendant and Plaintiffs and Class Members. As a fiduciary of Plaintiffs and Class Members, Defendant has duty to act primarily for the benefit of its customers and employees, which includes implementing reasonable, adequate, and statutorily complaint safeguards to protect Plaintiff's and Class Members' PII.

99.     Defendant breached its fiduciary duties to Plaintiffs and Class Members by, *inter alia,* failing to implement reasonable and adequate data security protections, failing to comply with the data security guidelines set forth by the FTC, NIST and HIPAA, failing to implement reasonable and adequate data security training for its employees, and otherwise failing to reasonably and adequately safeguard the PII of Plaintiffs and Class Members.

100.     As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered damages. Plaintiffs and the Class Members were damaged because their PII was accessed by third parties, resulting in increased risk of identity theft, property theft and extortion for which Plaintiffs and the Class Members were forced to adopt preventive and remedial efforts. These damages were magnified by the passage of time because Defendant failed to notify Plaintiffs and Class Members of the data breach until weeks had passed. In addition, Plaintiffs and Class Members were also damaged in that they must now spend copious amounts of time combing through their records in order to ensure that they do not become the victims of fraud and/or identity theft.

101.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all of the Class Members, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

1.     For an Order certifying the Classes as defined herein and appointing Plaintiff and his Counsel to represent the Class;

2.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3.     For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of PII compromised.

4.     For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

5.     For an award of punitive and treble damages, in an amount to be determined at trial;

6.     For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

7.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated:  June 19, 2023                              Respectfully Submitted,


/s/ *Thiago M. Coelho*
Thiago M. Coelho
**WILSHIRE LAW FIRM, PLC**
*Attorneys for Plaintiff*